H. L. HALL, Appellee, v. CHICAGO, ROCK ISLAND & PACIFIC RAILWAY COMPANY, Appellant.

1. **Practice in Supreme Court**: ASSIGNMENT OF ERRORS: AMENDMENTS. Amendments to the appellant's assignment of errors will be allowed in the supreme court where the appellee will not be prejudiced thereby, nor the submission of the cause be delayed.

2. **Evidence**: WITNESSES: IMPEACHMENT. It is not competent for a party to impeach his own witness by the introduction in evidence of an affidavit previously signed by the witness, and setting forth a contrary state of facts from that testified to upon the trial, nor by proof of declarations made by the witness inconsistent with his testimony upon the trial; and error in the admission of such impeaching evidence will not be cured by an instruction of the court to the jury, that the evidence could be considered by them simply for the purpose of explaining how the witness came to be put upon the stand.

3. ———: ———: ———. A party to a cause may be questioned upon cross-examination as to statements made under oath in his pleading, and inconsistent with his testimony upon the trial, although by an amendment to such pleading his right of recovery is based upon a different state of facts.

*Appeal from Jefferson District Court.*—HON. DELL STUART, Judge.

MONDAY, JANUARY 25, 1892.

ACTION to recover damages for personal injuries alleged to have been caused by negligence on the part

of the defendant. There was a trial by jury, and a verdict and judgment in favor of the plaintiff. The defendant appeals.—*Reversed.*

*Wilson & Hinkle, T. S. Wright* and *Cummins & Wright,* for appellant.

*M. A. McCoid,* for appellee.

ROBINSON, C. J.—In September, 1889, the plaintiff was in the employment of the defendant as brakeman of a freight train. While attempting, in the line of his employment, to couple together certain cars, he was caught by a moving car, and so injured that he lost his right foot and a part of his left heel. The accident occurred at Washington in this state. The train with which the plaintiff was working had been separated into two parts. The forward part contained ten or more cars, and its rear end was backed from the main track onto a side track for the purpose of taking out certain cars which stood on it. Each of the two cars which were to be coupled together had a coupling link, one of which had to be removed before the coupling could be made. The link in the stationary car was not removable, and the plaintiff approached the other car to remove the link and set the pin to make the coupling, when the car backed against him, his foot was caught by a brake-beam, and he was thrown down, and, being unable to free himself in time to prevent it, received the injuries in question. The plaintiff in his original petition stated that, when he observed that there was a link in each car, he signaled the engineer to stop, and, believing that the signal would be obeyed, he stepped in to remove the link, but the engineer did not obey the signal and did not stop; that the defendant was negligent in not obeying any signal to stop, and in not stopping the train. Other grounds of negligence were also alleged, but need not

be stated. The petition was verified by the plaintiff. After the case was reached for trial, and during the trial, several amendments to the petition were filed. The third of these, in effect, alleged that, if the engineer stopped the train, he negligently, and without a signal so to do, started it back, thereby causing the injuries of which the plaintiff complains. Near the close of the trial, the plaintiff filed another amendment to his petition, in which he alleged that the conductor carelessly and negligently ordered the train back, and that, in obedience to that order which was made without the knowledge of the plaintiff, and without any signal from him, while he was in a place of danger, the train was backed.

I. The appellee has filed a motion to strike from the files an amendment to the assignment of errors on the ground that it was filed too late to be considered. It is permissible to file such amendments, in the furtherance of justice. *Stanley v. Barringer,* 74 Iowa, 37. In this case it does not appear that the submission in this court has been delayed, nor that the appellee has been in any manner prejudiced, by the filing of the amendment. His motion is therefore overruled.

1. PRACTICE in supreme court: assignment of errors: amendments.

II. It was claimed by the plaintiff on the trial, and his testimony tended to show, that, when he saw there was a link to be removed before the coupling could be made, he was standing on the main track in sight of the engineer, and eight or ten feet from the side track on which the cars were moving; that the engineer was looking at him when he gave the signal, and, when it was given, turned as though to obey it, and that he thinks the signal was obeyed, and that the cars stopped; also, that after the cars stopped they were negligently started towards him by the engineer without a signal, or in response to a signal negligently given by the conductor. It was claimed by the defendant, and some of

2. EVIDENCE: witnesses: impeachment.

the evidence tended to show, that the plaintiff gave no
signal to the engineer, and was not where the engineer
could have seen a signal, had he given one; that no
signal to stop was given to the engineer until after the
accident occurred, and that the train was not stopped
until after that time; but that the conductor, seeing
from his position on the main track what the plaintiff
was doing, and that he was not in sight of the engineer,
gave the latter a signal to back slowly. For the
purpose of proving his theory of the case, the plaintiff
called as a witness a man named Collins who was rear
brakeman of the train on which the plaintiff was
employed when the accident occurred and was present
at the time. Collins, however, testified, in effect, that
Hall did not stand on the main track and give the
engineer a signal to stop, but that he walked by the
side of the car until he went in to change the link; that
he did not see Hall give a signal until he went in to
take out the link, and that while he was in there he
gave the signal to back up; that the witness gave the
signal to back up slowly just before Hall went in, but
that while he was in to remove the link the witness
gave no signal to the engineer to stop. The plaintiff
then asked the witness if he did not state in writing as
follows:

"STATE OF IOWA,  } ss.
"Wapello County.

"I, Albert Collins, being duly sworn, on oath say
that I was brakeman on the train by which H. L. Hall
was injured. I was on the ground near to him, and,
when he went in to fix the link ready for coupling, I
signaled the engineer to stop. If he had stopped when
the signal was given, Hall would not have been hurt.
He did not stop."

The witness at first denied that he had signed such
a statement, but finally admitted that he had signed a
paper for Hall. He was then asked if he did not tell
Calvin McCoid, one of the attorneys for the plaintiff, at

a time and place named, that he had signed the paper and would swear to what he had signed; and answered in the negative. He was then asked if he did not, in a. conversation specified, state to one Wright that he had given the engineer a signal to stop while Hall was fixing the link; also, whether he did not tell Wright that Hall gave the signal to stop before he went in to the link, and that the witness gave another signal to stop after Hall went in—and answered both questions in the negative. He was also asked if he did not sign a paper in the presence of Hall and others named, and whether he had not told Hall that he had given the engineer a. signal to stop, and answered in the negative. Wright was then called as a witness and permitted to testify that he had asked Collins if he saw the signal that Hall gave to the engineer, and that Collins answered that he had, and that he repeated it to the engineer. Wright also testified that he had told the plaintiff of the conversation. McCoid was called for the plaintiff and permitted to testify that Collins had said he gave the engineer a signal, and that he would testify to the statements contained in the paper he had signed. Hall was called, and testified that Collins read and signed the paper, and said he would swear to the statements it contained. The paper (omitting the sentence, "If he had stopped when the signal was given, Hall would not have been hurt.)" was then introduced in evidence. To all this evidence the defendant made due objection, and preserved exceptions to the rulings of the court in admitting it. It was admitted by the court "that plaintiff might show how he came to put said witnesses on the stand;" and the jury were so instructed, and told that they could consider it for no other purpose. The correctness of the rulings which permitted the plaintiff to introduce evidence to contradict the testimony of Collins by proving the statements he had made, and the declaration he had signed at other times, is now presented for our consideration.

It is the general rule that a party cannot impeach his own witness by introducing evidence which tends to show that he is unworthy of belief. *Thorn v. Moore*, 21 Iowa, 289; *Clapp v. Peck*, 55 Iowa, 272; 1 Greenleaf on Evidence, sec. 442. When a party is surprised by the testimony given by his witness, the attention of the latter may be called to the time and place where it is claimed he has made contrary statements. This is not for the purpose of laying the foundation for impeachment, but to probe and quicken the recollection of the witness, to give him an opportunity to correct his testimony, if it is erroneous, and to show that it has surprised the party who called him. *Humble v. Shoemaker*, 70 Iowa, 226; *Bullard v. Pearsall*, 53 N. Y. 230; *Hurley v. State*, 21 N. E. Rep. (Ohio Sup.) 645; *Cox v. Eayres*, 55 Vt. 27; *Melhuish v. Collier*, 15 Adol. & E. (N. S.) 878; 1 Greenleaf on Evidence, sec. 444a; 1 Wharton on Evidence, sec. 549. The district court was within the rule in permitting the examination of Collins as to the statements he had made and the paper he had signed, but erred in permitting other witnesses to testify as to his statements, and in allowing the paper he signed to be introduced in evidence.

It is claimed that the error was cured by that portion of the charge of the court which directed the jury to consider such evidence only to ascertain why the plaintiff called Collins to the stand as a witness. It was said in *Potter v. Ry. Co.*, 46 Iowa, 404, that: "Where there has been error, a presumption of prejudice arises; and, if the record fails to satisfy us that no prejudice has been caused, then such error cannot be disregarded. This should not be left in serious doubt." That rule has since been approved, and is in harmony with the settled practice of this court. See *Strobel v. Moser*, 70 Iowa, 126; *George v. Ry. Co.*, 53 Iowa, 504, The mere fact that the charge of the court was designed to restrict the evidence offered to a legitimate purpose does not show that no prejudice resulted. Errors may

be so serious that instructions to the jury will not cure them. *Martin v. Orndorff*, 22 Iowa, 505.

If the plaintiff attempted to take out the link and make the coupling while the car was in motion, he did so in violation of a rule of the defendant of which he had knowledge. He claims, in effect, that he had given the engineer a signal to stop, and had reason to believe that the signal was seen and obeyed; that before he went between the rails the train had stopped, or, if not, that it had so nearly stopped that he believed it was not in motion; that while he was between the rails the engineer, without a signal, or in obedience to a signal negligently given, put the train in motion. It was therefore important to show that the engineer had been given a signal to stop; and the alleged declaration of Collins related to an important, if not a vital, issue in the case. If the only signal to the engineer before the accident was given by the conductor, and was designed to lessen the speed of a moving train, and was obeyed, then, presumptively, it was the plaintiff, if anyone, and not the defendant, who was negligent. The declaration in question tended to show that the engineer received a signal to stop. If he received such a signal, and the plaintiff was justified in believing that it was obeyed, the jury might well have found that it was negligence for the engineer to start the train or increase its motion without a signal, or for the conductor to give a signal which would have that effect. There was much conflict in the evidence as to these matters, the greater number of witnesses testifying against the claims of the plaintiff. Moreover, the testimony he gave was not in all respects clear and satisfactory. Under these circumstances it would be natural for the jury to give weight to the statements of Collins in question, as those of an eye witness and participant in the transactions to which they related, made at times when he was free from possible constraint, and therefore probably true. Another effect of the statements

would be to show that the witness was unworthy of belief, and to that extent they would be impeaching evidence We think they must be regarded as independent evidence for an improper purpose. As the record fails to satisfy us that no prejudice resulted from their admission, but, on the contrary, leads us to believe that prejudice of so serious a nature resulted that the charge of the court did not cure it, the error must result in a reversal of the judgment of the district court.

III. During the trial the plaintiff, as a witness, stated on direct examination that the engineer obeyed his signal, and that he thought that the cars stopped. On cross-examination he was asked if he did not swear in the petition, and if it was not true, that the engineer did not stop. An objection to the question, as not proper on cross-examination, was sustained. We think the ruling was erroneous. In view of what the witness had testified to on direct examination, it was entirely proper to show on cross-examination that he had made contradictory statements in his petition or otherwise. The fact that he had stated in his original petition that the negligence of the defendant consisted in the failure of the engineer to stop would not prevent his amending his petition, and showing that the negligence of the defendant related to the starting of the train. He may not have known which theory of the case was correct, and was entitled to rely upon the one which the evidence supported; but it was the right of the defendant to show that the plaintiff had made contradictory statements in regard to the matter, in order that the jury might give no more than due weight to his testimony.

Numerous questions are discussed by counsel which may not arise on another trial, and for that reason they are not determined. For the errors pointed out the judgment of the district court is REVERSED.